## HARRISON BANK v. J. A. PORTER.

(Filed September 5, 1906.)

REPLEVIN—Evidence—Insufficient, When. In an action of replevin when the evidence does not reasonably support the verdict, the judgment rendered thereon will be set aside.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before James K. Beauchamp, Trial Judge.*

*Manatt & Sturgis,* for plaintiff in error.

*Robberts & Curran,* for defendant in error.

Opinion of the court by

BURWELL, J.: This is an action in replevin commenced by the Harrison Bank against J. A. Porter, to recover the possession of two horses. The plaintiff bases its right to possession under the terms of a chattel mortgage executed by one G. J. Dahlke to it on two horses, described in the mortgage as follows: "One bay horse six years old, weight 1200 pounds, branded 'C' on left jaw, valued at $100.00. One bay horse, six years old, weight 1200 pounds, valued at $125.00."

The mortgage also represents the property as being located in Kiowa county, and immediately after its execution it was filed with the register of deeds of that county. J. G. Hill, the cashier of the bank, testified that there was still due and unpaid on the debt, secured by the mortgage, the sum of $140.72; that when the mortgage was executed the horses

described therein were in Kiowa county, and were hitched just a short distance from the bank; that he saw the horses, and that the horses in controversy were the horses mortgaged to the bank.

The defendant claims under a purchase from the mortgagor, G. J. Dahlke. The horses at the time the defendant purchased them were located in Garfield county, and neither the original mortgage or a copy thereof was filed in that county; but it is not contended that it should have been if the property was in Kiowa county at the time the mortgage was given. He paid Dahlke $190.00 for the horses, and without any knowledge of plaintiff's mortgage.

The defense interposed was that the horses in controversy are not the same horses included in the mortgage. This presents an issue of fact. Against the positive evidence of Mr. Hill, the cashier of the plaintiff bank, that they are the same horses, the defendant offered the testimony of certain witnesses who testified that the horses were older than the ages stated in the mortgage.

The mortgage was executed on the 7th day of May, 1903, and the trial in the court below occurred on the 8th day of December, 1904, or a year and seven months later. Hence, according to the mortgage, the horses were, at the time of the trial, eight years and seven months old. Dahlke and his family lived in Garfield county, but he left there in the spring of 1902 and went to Kiowa county, where he was staying at the time the mortgage was executed by him, returning to Garfield county about harvest time of the same year.

The witnesses for the defendant testified in substance as follows: G. S. Fowler stated that he was a neighbor of Dahlke and that he could not say for certain whether or not

he ever saw the team' in question until after Dahlke returned from Kiowa county. M. M. Galloway testified that he had been in the horse and mule business at Enid for about seven years; that he had done hardly anything for the last 25 years except examine horses and mules; that he had examined the horses in question two or three days prior to the trial; that one would be eight years old in the spring following, and that the other one was about 11 or 12 years old; but that one cannot tell the exact age of a horse after it gets a "smooth mouth" which occurs at about 9 years old, except in cases where the horses are raised on a range, in which event the mouth gets smooth younger. Mathew Sherman testified that he was a farmer; that he had examined the horses, and that they were about nine and ten years old respectively; that the younger horse was branded "C" on the left jaw; that the younger horse would be nine the following spring, but that he would not be willing to say that he could tell positively as to a horse's age within a year. A. B. Wolsworth testified that he had handled horses on the farm all his life; that he had examined the horses in question; that one of the horses in his opinion was about 11 or 12 years old, and the other one about nine; that a horse usually gets a smooth mouth about nine, but as the younger horse's mouth was not entirely smooth, it might be eight; that after a horse gets a smooth mouth one must rely largely upon the general appearance of the horse in determining his age. Charles Crane testified that he had handled horses all of his life; that he had seen the horses in controversy, and that he thought the one horse was about 9 years old, and the other one, two or three years older; that a horse's mouth becomes smooth at about 12 or

14, after which time there is no certainty as to a horse's age, and even before that one may miss the age a year or two.

Is this evidence sufficient to defeat a recovery by the mortgage? We think not. And while it is a general rule of this court that a verdict will not be set aside if there is any evidence reasonably tending to support it, still, if from an examination of the entire evidence, it appears that the verdict is obviously wrong, and ought to have been for the other party, this court will not permit itself to be bound by such verdict, especially where the evidence on the one side is positive and direct, while that on the other side is not only opinion evidence but shows from the admissions of the witnesses themselves that it is uncertain and unreliable as to the correctness of the opinions given.

As to the horse that was unbranded, the evidence may be sufficient to sustain the verdict; the same cannot be said as to the other horse.

One witness places it at eight years old the following spring; another at nine the following spring, and two place its age at nine. This horse also had the brand "C" on his left jaw. The testimony of these witnesses also clearly show that they cannot tell to a certainty within one or two years of a horse's age. The only other discrepancy between the description in the mortgage and the horse is, the mortgage recites that the horse, at the time of the mortgage was given, weighed 1100 pounds, while there was some opinion evidence tending to show that the horse at the time of the trial, which was a year and seven months later, weighed 1200 pounds. Even if this were true, that would not excuse the defendant from investigating. We know from common knowledge

that a horse of that size, during a period of 19 months might vary 100 pounds in weight and the record of Kiowa county was constructive notice to all.

This is a case where each of the parties evidently acted in good faith, and loss must fall upon one.   The evidence did not reasonably tend to support the verdict as to the horse that was branded, and therefore the judgment of the lower court is hereby reversed at the cost of the appellee, and a new trial granted.   The case is remanded with direction to proceed in conformity herewith.

Garber, J., who was a witness in the court below, not sitting; all the other Justices concurring.